Good morning, Your Honors. May it please the Court. Lauren Tokolsky for Plaintiffs and Appellants, Richard Bonneau and Richard Wemmer. In this case, in response to a motion for sanctions by plaintiffs, the District Court excluded a box of documents that the City of Los Angeles had withheld throughout the litigation in this case. Counsel, I need some help at a more concrete level. The record was a little big for me to plow through. In every civil case, everybody important testifies twice usually, once at depositions and once at trial. The way I understood this case, all the people on the department side, the government side, testified we didn't give them promotions because their car ratings were too low. It was then finally hauled out of them either just before or during trial that they faked up, I think it was just before trial, they faked up the car documents. The whole thing was phony. They've been altered. So the judge said, well, you hid this and you produced it too late. Nobody can refer to the car documents in opening statement, neither side. As for later, conceivably they could be used as impeachment if the plaintiffs try to take unfair advantage of the order. And as for how they can come in later, what the plaintiffs will do, well, you can't mention them for right now in the opening statements. And the judge thought, the way he articulated it, that he had now avoided terminating the case but blown away the whole defense, since the whole defense was the statements that they rated too low on the car reports. Have I got that right so far? I would disagree with various parts of what you said. Okay, educate me. So it's correct that during the depositions in this case, several of the defendants' witnesses, the deputy chiefs and chief parks, said that one of the reasons that Bonneau was not promoted was because of the abysmal results of the car audit. On March 30, 2007, the city attorney's office, after we filed a motion for sanctions, produced a box of documents. Just tell me where I was wrong. So far you've been telling me where I was right, and I already knew that part. All that was produced to us was a box of documents showing that changes were made. We don't know who made the changes. We don't know why they were made. All right, let's assume the best for your side of the case. What they showed was a fraudulent cover-up. Now, here's what I was leading up to. Now that the judge had blown away the city's defense by not letting them prove that the car reports justified not promoting these three fellows, what did they do at trial to explain why they didn't promote these three fellows? The car audit, just to clarify, only went to Bonneau. The car audit had nothing to do with Wayne. So that's the first factual correction. The second issue is that there were other defenses that the city had asserted as to Bonneau throughout the litigation of this matter. You know, I don't care about asserted, and I don't care about throughout the litigation. I'm asking you what happened at trial that the city put on before the jury to show. The city asserted two other defenses to Bonneau's failure to promote claim. Those two defenses were that he was soft on discipline and that none of the other deputy chiefs had raised his name in these meetings that Chief Hart testified he held in which promotions were discussed. Now, the sanction that was issued was erroneous for several reasons. Probably the most important value of that box of documents was impeachment. By the time we got the box, we didn't have time to know who had made the changes or why. Well, what do you mean you didn't have time? Did you ask for a continuous? No, Your Honor, we did not. You see, that's the part that baffles me. It seems that somebody sat down behind the scenes and said, boy, it may be that this is a standard audit. I mean, I've looked through a million of these. The original investigators say X, and then somebody reviewing says, well, no, X1 or non-X or something like that. Or it could have been a phony deal. But it seems that your side very well might have said this is as good as it's going to get. We don't want to find out that this was maybe done in the ordinary course of business, so let's go with what we've had. We've knocked out their primary protection on the Bono case. So I can't understand why I shouldn't construe that as meaning you were happy to go ahead with what you had. If you wanted to find out if it was a fraud, you could have asked for a continuous, jumped up and down, and then appealed the judge's refusal to give you a continuous to find out if this was a fraud. I absolutely agree with everything that you just said. We were ready to go to trial. We asked to go to trial. We wanted to use the box of documents. And it was a provisional. Judge Teshima didn't say you can't use them ever. He said, for now, that's the way it is. But if something comes up, let me know. And nothing ever came up. I don't know. Am I right? Did you ever ask in the middle of trial, now we want to use these? We did, Your Honor. And what happened? In fact, we did in a different context. Well, and that's in a different context. Well, if Your Honor looks at the extensive record, there was a point where we had argued that the door to the car audit had been open. And the Court explicitly said that he disagreed with that. And then in his view, the door to the car audit had not been open. So you see, but there was a door there. That's the point. It was a provisional ruling. And if you could show at some time during the trial that these were relevant, he was going to let you use them. And he concluded that they weren't. I'm not saying that the door hadn't been open. Let's put it that way. I think it's important to look at the nature of the provision that Judge Teshima entered. What the judge said in his ruling was that if Chief Parks took the stand and shaded the truth about the reasons why the no wasn't promoted, that at that point he would consider permitting plaintiffs to go into the car audit. That ruling was an abuse of discretion for two reasons. First of all, any provision that relies on a witness at trial, in essence, perjuring themselves, should be an abuse of discretion. Plaintiffs' counsel should not have been put into the position of forcing Chief Parks to lie on the stand before being allowed to use this great impeachment evidence. The second problem was. What else would you be impeaching if nobody lied? Well, we knew that somebody had doctored the documents. Well, that's not true. What do you mean by that? See, there you go again. You're asking us to assume that the documents were doctored. And it very well had been that this is something that happened in the ordinary course. And we don't know because you didn't ask for a continuous to find out. That's correct, Your Honor. What we wanted to do with the documents, like any other evidence, was be able to use them. In our opening statement, we wanted to say to the jury, 11 days ago, the City of Los Angeles produced to us a box of documents showing X. We don't know why these changes were made. But here are the final audit results, and they're very different. It's for you, the jury, to draw whatever imprints you will about why those changes were made and why this box of documents was withheld until 11 days before trial. Well, you see, now you're really asking the jury to speculate on something to which there was an answer and which you decided not to go and find. I mean, I changed audits. Everybody does. You get the original investigators. The Supreme Court changes us. I mean, these kinds of things are revised all the time. You may be right. Somebody may have cooked the books, but you also may be wrong. This could have happened just in the regular way things happen on audits. And let me address the issue of why we were not inclined to ask the Court for another delay in this case. This case was originally filed in 2002. By the time we got to trial, it was 2007. The trial had already been continued two times that year, and so we were in the position of having to call our witnesses, reschedule them again, ask them to come again. Our client, we were ready to go to trial. We had our trial strategy. We had our witnesses lined up. Boy, and I'm thinking if you catch them phoning up the records, they're dead in the water. You made a judgment call. We did make a judgment call, Your Honor. Counsel, I know the judge wouldn't let you mention it in opening statement, and you think you should have been allowed to, but once we're past opening statement and the presentation of evidence, the judge obviously thought, he said he thought, that's why it's obvious he said so, that he was blowing away the defendant's case by not letting them put in the audits that supported them. Why couldn't you, during the presentation of your evidence, then once you'd built up some foundation for it to show how important these car audits are and promotions and that sort of thing, why couldn't you then approach the judge at sidebar or before trial started in the morning and say, Your Honor, we request a modification of your previous ruling. We want to put in both the audit reports that were produced timely and the audit reports that were produced untimely to support an inference that the jury can draw that the city knew what was in the wrong. If you had done that and the judge said, nope, nobody can put them in for any reason, it seems to me you want us to infer that that's the way it was, but I don't recall that your side ever made a request like that. We were prohibited. Plaintiffs were prohibited. Did you ever make a request such as I described? I just want to correct something factually, Your Honor. We were prohibited from mentioning the car audit at all during trial. We, the plaintiffs, we were never allowed to build a foundation, as you suggested, mentioning the car audits, talking about the car audits. The no's command was selected for a car audit. It was only the plaintiffs. Well, wait a minute. I'm looking at page 13 of the excerpt. So at this point, you know, when you make your opening statement, you shouldn't refer to that at all. Now, when I say at this point, this is what I mean, and so forth, and then he gives you one example of where it could come in later. I didn't understand where he said this ruling is not modifiable subsequently during the trial. All I see is an absolute bar in bringing it up in an opening statement. I think that it's an absolute bar on either side mentioning it. Show me the words. He says on page 14, if you want me to change the page. Page 14, bait stamp? Yes, of the excerpt, ER 14, in tab 1. Now, when I say at this point, that is what I mean. You've got maybe a week to put on the plaintiff's case. At some point, if the city attorney wants to make an inquiry, et cetera, et cetera, I should try to convince me I should change my mind. I'll be happy to reconsider this, all right? I'm reading line 16, 15 and 16. I'll be happy to reconsider this, all right? He's talking to the city attorney at that point. What difference does that make? He says I'm happy to reconsider it. Your Honor, with all due respect, at that point in the argument, what the Court is saying is that if the city attorney comes in with evidence that no intentional misconduct occurred, the city would then be permitted to use the evidence as they saw fit at trial. That was not the instruction asked for. And your blue brief is screaming at the top of his lungs. You caught him fabricating. You didn't catch him fabricating. That was a very strong inference, Your Honor. And that's why Judge Tshishima described the box of documents as the nail in the coffin for Bernard Parks. Even when the district court saw this box of documents, he said to the city, I think that if this box of documents gets in front of the jury, it's the nail in the coffin for Bernard Parks, and that the city should almost be grateful for my ruling because if this box of documents gets in front of the jury, you know you're dead, is what he said to the city attorney's office. Given that at least the district court thought that this box of documents would be very, very damaging to the city, his decision in precluding us from using it was an abuse of discretion. Even if there is some kind of provisional ruling, as Your Honor has pointed out, that provision wasn't fair to the plaintiffs. By the time Bernard Parks got on the stand to testify, it was day three of the trial, but no one had already testified. His supervisor had already testified. The car audit, we weren't allowed to. It hadn't been mentioned by any of those witnesses. If we forced, somehow forced Bernard Parks to perjure himself and thereby opened up the door to the car audit, we would have had to put Bonneau back on the stand. We would have had to put his supervisor back on the stand to explain why somehow they hadn't mentioned the car audit during their testimony. Scott LaChasse was Bonneau's supervisor in the southeast. He was prepared to testify that when the car audit results were announced, Bonneau's promotion was dead in the water, and that was going to be his testimony before trial. And that's why none of the deputy chiefs raised Bonneau's name in terms of getting a promotion. So Scott LaChasse testified on day two of the trial. Bonneau testified on day one. By the time Parks takes the stand, the only avenue we saw that we might have had to open up the door to the car audit, our opening statements had already been given. And it would have been very confusing to the jury for us to try to press Parks to try to get him to lie about something to open up the door to the car audit. We would have had to establish through an adverse witness on the first time on the stand that the documents had been withheld. Whether he knew about any of the changes that had been made, in all likelihood, Parks would have denied it. I'm sitting here thinking all of this is of your own making when you decided not to go find the answer to what happened. When we didn't request a continuance of the test. You're trying to find out whether the audit had been, as you call it, fabricated, rigged, changed in order to support this, or whether this was something that happened in the regular course of review by superiors of auditors. You made that choice. So all of the things that you're telling about flow from your calculated decision, we got them. They can't use the audit anymore. I would respectfully disagree that this was a problem of our making. The misconduct that occurred here was on the part of the city. What misconduct? Misconduct may be in not giving you that information, but we still don't know what the information means. But let's focus for a moment on the misconduct that occurred. We propounded document demands in 2003, asking for all documents related to the car audit. Several documents, hundreds of documents, were, in fact, produced to us. The final audit reports and the individual reports from the auditors showing that the demand was unsatisfactory. It was only in 2007, in preparing for trial in this matter, that we learned from some witnesses that we intended to put on at trial that maybe one and maybe two of their ratings had been changed. When we learned that information, we said to the other side, hey, some of our witnesses have said that these audits were changed. Where are the original documents? We had thought we had the original documents, but, in fact, it turns out that what you gave us is not the original document at all. We received no response at first to that particular query. And it was only after we filed a motion for evidentiary sanctions that the box of documents was produced to us who made the changes, why they were made, or why that box of documents had been withheld. The district court found that the original draft reports, the ones that showed that the command was actually fine, were the subject of those 2003 document demands and that they should have been produced in 2003 so that we had the opportunity to do discovery in the case. There was sufficient evidence before the court to find that the city had intentionally withheld the documents or at least enough evidence to meet the Ninth Circuit standard for what constitutes bad faith to warrant the entry of terminating sanctions. You know, our Ninth Circuit law in terminating sanctions is very demanding on the court that imposes them. We've had a couple of cases like Valley Engineers and one of the Anheuser-Busch cases where we said they were the right thing and there was a Medicare fraud case, as I recall, where we said it was the right thing. But generally, we've said the judge generally shouldn't do it unless the case has reached the point where it's impossible to know the truth. He should impose some lesser sanction, and there are many that are imposed, like changing the burden of proof or precluding the use of some sort of evidence. There are all sorts of lesser sanctions. And here, what the judge did was he imposed a lesser sanction on your adversary, not your side. But you're complaining that it had a bad effect on your side. Now, that's plausible. But all of his discussion was about what he was doing to the other side, and he was very careful to qualify and say at this point and this is preliminary. He used those words to indicate that I'm not closing the door. So I don't get it. First of all, it's hard to impose a case terminating sanction. And second, he didn't impose an absolute bar on your side using this evidence, just on the other side. I respectfully disagree with that characterization of what the Court did. If you read the transcript of the hearing. You better show me which pages to read, because I just reread those pages, and that's how I read them. I will, Your Honor. I'm looking at 13, 14, 15. I'm curious if Judge Toshima wrote the Levin or the Levin case, too. And I wrote a bunch of Holden case terminating sanctions, three of them. I know, Your Honor. And Your Honor's language in the Valley Engineer's case is really, for me, important in this case. And what Your Honor said in the Valley Engineer's case is that there's no point in applying the law to lies, that if the factual predicate, if the defendant's misconduct, if the parties' misconduct. The rhetorical flourish did not stand alone. What I said was there's no way for a jury to ever find out what the truth is here, because everything's been faked up to the point where you never know. And I think that applies in this case. Aside from the, you know, the statements related to the context of affirming a district judge's exercise of discretion, explaining why the district judge in that case did not abuse his discretion in imposing terminating sanctions. That's correct. It hardly stands for the proposition that the district judge abuses his discretion by refusing to impose terminating sanctions. That's correct, Your Honor. And that brings us to the interesting question of the standard of review in this particular case. There are two different standards of review that apply to what the district court did with our motion for terminating sanctions. The first is that if the court doesn't go through the five-factor test, the district, or excuse me, the Ninth Circuit is to independently review the record to go through those five factors and determine whether there was an abuse of discretion. Where did these five factors come from? They're stated in many cases by Anheuser-Busch, states them, Judge Kleinfeld's decision in Anheuser, repeats them as well, and those citations are? I repeated them in the context of saying it's not a mechanical test, they're just things that the judge might want to think about. That's correct, Your Honor. And I would ask that this court go through those five factors in the way that we've set forth in our brief to review whether terminating sanctions were justified. Also, as Judge Kuczynski said, that was to make sure the judge doesn't impose terminating sanctions when he shouldn't have. It's before you can impose terminating sanctions, you have to – you ought to look at these things. But here, the judge didn't impose terminating sanctions, so we don't have to determine whether he abused his discretion by imposing them. That's correct, Your Honor. And I agree with Judge Kuczynski that, as far as I can tell, there has never been a case in the Ninth Circuit that has specifically addressed the question of a judge's failure to enter terminating sanctions. And how that kind of failure to impose the sanctions has been reviewed. But I would suggest that the appropriate standard of review in this situation is that the court does go through the five factors, independently review the record. And I think as Judge Kleinfeld again stated in the Adriana case, where the district court declines to make findings of fact, that there's actually a de novo review standard in terms of the record. And that, Your Honors, if there is no particular finding of fact, for example, on whether the city engaged in bad faith, that the review then becomes de novo. Is it correct that I understand you right, there's never been a case in the Ninth Circuit reversing for failure to impose terminating sanctions? Not that I could find, Your Honor. You must have looked. I looked a little bit. But I want to turn back to this question of whether the- Of course, Your Honor, you're out of time.  May it please the Court, Your Honor, I'll stop for the City of Los Angeles and Bernard Parks. Do you feel- The Court has- I'm sorry? Do you feel there's anything you heard today that's not adequately covered in your brief? I think the Court has addressed pretty much everything I was going to raise. I was going to agree that I could also not find Ninth Circuit authority addressing the issue of what happens when there's review of a non-imposition of a terminating sanction. I couldn't find one either. And I looked at spoliation cases to see if there was something similar. I think the five factors are examined independently when a sanction like that is granted. But when it's not granted, it's abuse of discretion. That is, was the evidence such that there was really no reasonable choice other than to find that there was bad faith and so on? And I think clearly that the record here would not support that kind of finding. Other than that, I am prepared to submit on the briefs for an answer to the Court's questions. Okay. Thank you. The case has now been submitted. We are adjourned.
judges: Kozinski, Trott, Kleinfeld